OPINION OF THE COURT
Stephen G. Crane, J.
This motion to vacate dismissal of plaintiffs’ complaint due to the refusal of counsel to proceed to trial is denied.
*850 Plaintiffs are required to demonstrate a reasonable excuse for the refusal, merit to their case, lack of prejudice to defendants and the absence of an intent to abandon the matter. (Khayat v Gill, 278 AD2d 15 [2d Dept 2000]; cf., Sanchez v Javind, Apt. Corp., 246 AD2d 353, 355 [1st Dept 1998]; CPLR 5015 [a].) Plaintiffs’ motion addresses only two of these four requirements.
The court will neutralize, arguendo, the second element requiring a demonstration of merit. Plaintiffs rely on an affidavit in opposition to the motion for summary judgment of Lenox Hill Hospital. The motion was granted by Justice Shafer on March 2, 2000. Yet, plaintiffs trot out the affidavit, unsuccessful though it may have been in staving off the hospital’s application for summary judgment, of their expert orthopedist. The thrust of this affidavit, of course, was to affix blame on the hospital for permitting a resident to perform parts of the surgery that plaintiffs claim constitute malpractice. Yet, in the affidavit the orthopedist opined that the failure of the surgeon to remove enough of the disc to decompress the entrapped spinal nerve was a contributing cause of the injury. In reply papers to the now pending motion to vacate the dismissal, plaintiffs contend that this opinion establishes a prima facie case of malpractice “if Dr. Ferriter performed the surgery.” While the quoted statement is astounding to the court at this stage of the litigation, it will be taken as establishing colorable merit to the cause of action for malpractice against the doctor, the remaining defendant in the action.
Difficulty remains in embracing plaintiffs’ excuse for the failure to proceed to trial. Their trial counsel — not counsel of record — claims that he was actually engaged in a trial in Kings County Supreme Court on October 4, 2000, the date set for trial in this action at the same lawyer’s own request. This lawyer says that he was taken by surprise in Kings County and sent out to trial there against his will. The facts are that this action was commenced in 1995 and placed on the Trial Calendar in 1998. It was called to trial on May 23, 2000, but plaintiffs’ expert was unavailable. Consequently, Justice Shafer set the case down for a firm trial date of September 18, 2000. Dr. Ferriter’s attorney was ready for trial on both dates. Plaintiffs’ trial counsel, however, had just completed a trial— again in Kings County — and asked for a short adjournment. The indulgence was granted until October 2 when plaintiffs’ trial counsel interposed an affirmation of actual engagement in Kings County. The case was put over for two days to afford *851 plaintiffs an opportunity to appear by counsel of record, by trial counsel or otherwise. On October 4, despite ample warning, no lawyer for plaintiffs attended in New York County ready to proceed to trial.
Plaintiffs’ trial counsel was not able to stave off his Kings County trial, though he says he tried to do so. Yet, as far in advance as a week before the October 2 trial date, he asked his adversary for an adjournment because of the upcoming trial date in Kings County.
The trial of this action in New York County was scheduled four months in advance at the request and with the commitment of plaintiffs’ trial counsel. In such circumstances the Uniform Rules for the Engagement of Counsel, promulgated by the Chief Administrator of the Courts, 22 NYCRR 125.1 (g), mandated that trial counsel for plaintiffs appear on September 18, or, as adjourned at his request, October 2. His actual engagement in Kings County did not exculpate him from this obligation; it presented an alternative that he supply substitute trial counsel. He did neither. In an abundance of accommodation to plaintiffs this court went so far as to contact counsel of record — trial counsel to plaintiffs is not even listed in the court’s computer system. They were given the opportunity to step in for trial counsel, obtain substitute counsel or try the case themselves. No one appeared from Marshall & Bellard, plaintiffs’ counsel of record. In these circumstances, the excuse for the default is inadequate.
Indeed, plaintiffs’ counsel fails to show a lack of intent to abandon this matter. This motion, however, evidences a desire to prosecute. But actions speak louder than words, and the behavior of trial counsel from May 23, 2000 demonstrates a disregard of professional obligations to this court, this case and these clients. For whatever reason, he has preferred to commit his time and talent to his Kings County litigation. To tolerate the assertion — not even made here — that the clients had no intent to abandon the action, where their attorney has acted this way, simply licenses parties and their attorneys to repudiate the management responsibilities of Judges.
Finally, plaintiffs utterly overlook the element of prejudice to defendant. Due to plaintiffs’ counsel’s preference to try his Brooklyn cases, Dr. Ferriter’s attorney has had to reschedule witnesses, she says, four times. Certainly, she had to prepare for trial on three occasions, May 23, September 18 and October *852 2, 2000.* To restore this matter simply adds insult to those injuries. In an appropriate case, perhaps, this prejudice could be redressed with an award for costs. If the court were to be granting this motion, it would require, as a condition to vacating the default, payment by plaintiffs’ trial counsel to defense counsel costs of at least $30,000!
I am not insensitive to the effect this decision will have on plaintiffs. This is tempered by the fact that they have already lost summary judgment against the hospital. This places a major obstacle in the way of their theory that the participation of the resident of the hospital was a cause of injury and a departure from acceptable medical practices. Together with a barely sufficient claim against Dr. Ferriter, these factors diminish the severity of the denial of this motion. But the plaintiffs will not be without remedy because they may have a legal malpractice claim against their present attorneys.
In any event, my sensitivity to the clients’ position in which their counsel have placed them is overborne by a public policy that I am obligated to enforce. This policy has altered the way in which litigation is conducted. When I first became a lawyer, the progress and pace of litigation rested exclusively with the advocates. Today, the wheel has turned 180 degrees. It is the court that the lay public wants to oversee the conduct and course of litigation. This policy is designed to protect the profession and the judiciary from criticism, all too often justified in the past and sometimes in the present, that litigation is overly costly, protracted and untimely. The level of disrepute that our profession currently suffers stems largely from the abuses of the past. This court would simply become an instrument in this disrepute were it to grant the motion to vacate in the egregious circumstances presented at bar.
Accordingly, it is ordered that the motion is denied.

 Defense counsel also argues that plaintiffs failed to supply expert disclosure under CPLR 3101 (d) until the night of October 4, 2000. Thus, she points out that her adversary was not even prepared for trial on the three prior occasions.